Thank you, good morning, dear brothers, good afternoon, honorable citizens of the College of Denver, or Mr. Stevens. This past Monday was the 50th anniversary of the Moria House Supreme Court. The Supreme Court has served as an important, hard-working overseer of traditional justice and human rights. So it makes sense that we are going to be discussing Mr. Stevens' case in this case. Thank you for the very good interview. Mr. Stevens, are you the U.S. Supreme Court that, at a short point, initiated the conversation in the federal court on the murder of Clarkson in early January? In the same course, which was a matter of politics, not a matter of interrogation. So is our position, Mr. Stevens' position, that this case is a violation of Tay-Wan and Angela's people, regarding the fact that the Supreme Court initiated the conversation in the federal Supreme Court and, in fact, initiated the hearing in the U.S. Supreme Court, for example, Mr. Stevens, the Supreme Court stated that Officer Osherston did not answer Mr. Stevens' legal questions during the over-emphasis statement. Again, Mr. Osherston self-admitted, as I must stress, that he did ask questions to Mr. Stevens. And, among the questions that I just referred to, Mr. Stevens did not answer all of the questions. Mr. Stevens, according to his words, when he said this, he basically wanted to know, what were you going to say to me before I submit all of your investigators to the appointment for a third interview, since every time there's always a third interview. I'm sorry. In the O.R. 1682, 17, 697, and 39, there were some additions. There's a question asked by Ms. Banks. Did you ask any questions in the interrogation room? The officers seemed to be easily indigent students, and it seemed to be fine. I asked questions about the questions, and I think that was one of them. Is there any questions about this case? Is there any question? And I have it in the card. Mr. Stevens, you are correct. Mr. Stevens did not answer the first statement. However, his first answer, rather, was more of a decree than a post. Thank you. Ms. Banks, what did you do? What did you do? Ms. Banks, what did you do? Ms. Banks, it is unreasonable. I'm sorry to interrupt you, Ms. Banks. In some of these cases, investigators continually volunteer. So, the first statement is not enough for an answer. What you have to have here, Ms. Banks, is that the officer, of course, We have a few new signatures. In page 17 of the jury district 216, you didn't give us the whole context of the questions and the answers. After I lost two Christians and said I didn't ask you a whole lot of questions, you continually came and asked. You continually even told me a story. I said, well, maybe that sounds good. That's a good alternative. That's an exception. We want to keep the same question. You didn't ask a lot of follow-up questions. Answer no. The question wasn't your intent. It's an indivisible statement. Answer no. The constant unreasonable factual determination. I said, well, the jury didn't get to you. That's a mistake. Or, it's a little bit of a mistake. It wasn't the jury. Maria, this is for you. Go ahead. Well, Mr. Schultz, as you mentioned, we're going to try and pull up your recharge, right? We'll give you a month's sentence. We're going to give you a minute and a half. We're going to answer your questions. We're going to answer those questions. And then we're going to answer your questions. And we have specific opinions. We don't know what was going on very much on both the U.S. and versus what it was. And the DC officers are aware of what the amount of charges would be. Thank you, Mr. Schultz. I've been told by many lawyers and historians, and I've been told that that's very much what's been in this case. It's an officer conscience. You offer uncivilized injuries. It's also stills. The story is ridiculous. It's an unbelievable story. It's one of the most believable stories. It can take your lives. It can melt some bones. It can create a response from wherever it comes from. The record shows that within four or five minutes, one of the guys had been charged with an assault. He called 911. He was making charges here, but neither had included the charges that could result in death, in the transgressions, in talking freely. And then there was a long pause of silence, which he also testified was four or five minutes. It didn't take your life. I understand that he was writing into a legal summary. I just don't think that he did. He didn't talk about interrogation. I think he did talk about it. The point is, the conviction, the money for the conviction, did not happen in court. The money for the conviction happened in the interrogation room. Now, there are officers conscience. It's a different part of my environment that I'm aware of every single time. She still wants to talk to me. It's a different part, and it's in some important areas, and I'm watching this all happen, frankly. And then I will get to where everyone's here, and in case you didn't hear me, I'm a secret agent. I'm going to go through these questions first. I'm watching the time management, and I'll get to where everyone's here. But since I didn't do all of this, this is super expensive, and I know you're going to be confused. I didn't do all of this. This is a short test. Here's another question that my clients could see. If you were asked an interrogation, you'd be overwhelmed in between 15 minutes and 20 minutes between these interrogations, and these are your special experiences, and the first has an overwhelming consequence if you have both the subject and the actions. And I mentioned the first message. It's also to convince you for, and there are other terms you have to be using. And my associates that you do not have to be convincing I'm just going to go through these questions a couple at a time, and then we can move on. I think I have a number right here. Go ahead. Thank you. This is for Tom. Are future internal law officers important to you? Tom. The senior history with the students is a pretty important piece of it. But there is a main correspondence between the most impressive, followed by students in law school and the internal law, which comes over as a two-step process. If you look at the transcripts of the students, you can see kind of two-fold. You can see it's a top-order charge, interdict, argument. Both in law school, it is the federal and the state law that tells you your course of morality and your innocence. It's a dimension that, in this circuit, according to the United States Constitution, to these committees, that are, again, intended for deliberative, substantive interrogation processes that are reviolation-oriented. Something the U.S. State Courts have to talk about in order to find the appropriate form of federal law, which is at least in the Indian part of the United States, which is supposed to be two-step. And then you need to share your input as much as possible So, again, you can see here, in terms of the two-fold, I don't know if you've noticed, but it's a very well-found and it's been on the U.S. Courts of Record where James Paulson talks about how he views this as a secret situation. And in fact, in a particular case, we found that there was an interrogation and that he was in a good understanding of the situation. So, of course, it's important that this is a secret and that there were a couple of mechanisms that were already in place. There's such a training of officers in this two-step interrogation that this is the kind of situation that the Supreme Court was trying to make it a secret. It's interesting, they were specifically told during the first stint how you're supposed to find this and be aware of this. And so, you know, Judge Mosley, you know, when they were looking at this case back in 2005, he was in office for a year. And, you know, Judge Mosley actually embraced the rationale of the secret immediately. We have a situation where if you're going out of your way to just put a stone piece and do what it's worth and now bring up all the mechanisms to a grand upstatement, you know, it really grows. The potentials of grand up and indefinitely falling are some of these hard to see. Actually, Mr. Stevens was in the courtroom and it's 3 days on and he was told that he had defended Mr. Stevens and he's under arrest and we're just going to use just a little while to figure out the reasons and the points of view on this and put him in Ireland for five minutes. He looks at the past of the case almost unfortunately and he's in court and I think he's also having a chance for it. He, according to what we estimate is a soft charge to him communicating with the DA's office and we were able to try and get him in front of the child's house for 15 minutes to report. I don't know if you're understanding this but the question I'm wondering is was the Baldwin and Evans and Officer Hutchinson or the judge's associate have any explanation for why they're going to jail or any warnings at this time that they told them we're under arrest and we're taking you to jail for this? I think their best explanation would be that they had an opportunity to interview him. He was already interviewed twice and they let us know that he was also participating in the trial   taken one while Officer Hutchinson was trying to pay three more units for excursion work but I'm trying to figure out what was going on and what was going on and I think police was just drawing gun wave and yelling and the police once did break our glass and we're not going anything on to him but he got out before he was released after he told them to trust the police and he walked home without saying anything and was transported to OCC and Mustang where he died and was taken to   died and he was taken out and was either shot or killed and he was taken bitch and killed and he was transported to OCC and Mustang where he was taken to hospital which          died in that hospital which is where he was taken to the hospital which is where he was unfortunately in that   he died in    that was his last  he stared to look at and added the traces that he saw on his neck over and out to hospital care staff did not have the time to get his name back out and so that death would not have happened on that day but that should be our responsibility as officers and defense officers that were on the suspect's perspective and the officer didn't need those help so I'm pretty uncertain as to how the department will  to    pretty uncertain as to how the department will respond to that and I'm pretty uncertain as pretty uncertain  how the department will   and I'm pretty  as to how the will respond to that  I'm uncertain as to how  department will
judges: Tallman, Clifton, Ikuta